LAW OFFICES OF ODION L. OKOJIE
Odion L. Okojie, SBN: 164931
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: Info@Okojielaw.com

DAVID IYALOMHE & ASSOCIATES
DAVID IYALOMHE, SBN: 222396
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: david@doialaw.com

Attorneys for Plaintiff: ANTHONY AWOSANYA, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AWOSANYA, an individual;<br><br>PLAINTIFF,<br><br>vs.<br><br>MATRIX SERVICE COMPANY, Doing Business in California as MATRIX TANK COMPANY; MATRIX SERVICE INC; and others who may be joined under Rule 19 of the Federal Rules of Civil Procedure<br><br>DEFENDANTS. | CASE NO: **8:21-cv-02007**<br><br>COMPLAINT FOR DAMAGES AS A RESULT OF DISCRIMINATORY EMPLOYMENT PRACTICES DIRECTED AT PLAINTIFF IN VIOLATION OF FEDERAL AND STATE EMPLOYMENT LAWS<br><br>PLAINTIFF DEMANDS JURY TRIAL |

COME NOW PLAINTIFF ANTHONY AWOSANYA, an individual (hereinafter referred to as “Plaintiff”) and pursuant to Rule 8(a) of the Federal Rules of Civil Procedure set forth the following allegations in support of his claims for relief in this action:

## INTRODUCTION

1. Plaintiff brings this action against Defendants, including his former employers, MATRIX SERVICE COMPANY, doing business in California as MATRIX TANK COMPANY and MATRIX SERVICE INC., to enforce Federal and State of California laws which prohibit discrimination and harassment based on disability, race, color and national origin and further prohibit retaliation against employees who assert their rights to be free from such discrimination and harassment. During the course of Plaintiff's employment with Defendants, he was subjected to a hostile work environment, denied requests for reasonable accommodation, and terminated because he was a disabled Black, Nigerian/ African-American and for protesting against or made complaints of discrimination, harassment, and retaliation.

## JURISDICTION AND VENUE

2. Plaintiff brings this action to enforce the provisions of federal civil rights statutes, including but not limited to the provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a)(1), as amended.

3. Jurisdiction of this court is also invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1346, and 1367, and the court's supplemental jurisdiction under 28 U.S.C. §§ 1367(a) over related state law claims, each of which arise out of a common nucleus of operative facts.

4. The venue of this action is properly in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and 42 U.S.C. §2000e-5(f)(3) as Defendants conduct business in this judicial district and part of the events or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

5. Plaintiff is and at all relevant times herein was an American citizen, of Nigerian/African-American national origin and descent and resident of Riverside

County, State of California. Plaintiff sustained a serious work related injuries, which caused permanent disfigurement, impairment and disability, namely amputation of his right middle finger that substantially limited his ability to work, lift, and perform regular manual tasks.

6. Defendants MATRIX SERVICE COMPANY, doing business in California as MATRIX TANK COMPANY and MATRIX SERVICE INC., (hereafter referred to as "Defendants" or "Matrix Service Company"), are now, and have at all times herein mentioned, conduct and conducted business in and have places of operation in County of Orange, California. Defendant Matrix Service Company employs at least fifteen (15) people for each working day in each of twenty or more calendar weeks in the current and preceding two calendar years, and accordingly is an "employer" within the meaning of Title VII, 42 U.S.C. §2000e(b) and the less stringent established in the State of California pursuant to the provisions of sections 12926(d) and 12940 (4)(a) of California Government Code ("FEHA").

7. Defendants provide, among others, construction, maintenance and fabrication to energy and industrial markets across North America.

8. Plaintiff is ignorant of the true names or capacities of the Defendants sued herein under the fictitious names of DOES 1 through 10, inclusive, and therefore sue the said defendants under the fictitious names. Plaintiff will amend the Complaint to allege the true names or capacities of the said defendants upon ascertaining same. Plaintiff alleges that the DOE Defendants, and each of them, were or are agents, employees, managers, supervisors, business affiliates, subsidiaries, parent companies and owners of Defendants, and directed or controlled the working conditions of Plaintiff. Plaintiff alleges that each of the DOE Defendant is responsible in some manner for the occurrences herein alleged and the damages as herein alleged were directly and proximately caused by the

conduct of each defendant.

9. Plaintiff alleges that at all relevant times mentioned herein, each of the Defendants was acting as the agent of every other defendant, and all acts alleged to have been committed by each defendant was committed by all of the Defendants, and/or agents, servants or employees of Defendants, and Defendants directed, authorized, or ratified each of such act. Plaintiff also alleges that Defendants, and each of them, were agents, employees, co-conspirator, business affiliates, subsidiaries, parent entities and or owners, of the other defendants, and each of them; and in so doing, were acting at least in part or in whole, within the course and scope of such agency, employment, conspiracy, joint employer and/or alter ego status and with the permission and consent to each of the other Defendants.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff filed charges of discrimination, harassment and retaliation on the basis of race, color, national origin and disability under Title VII, FEHA and Unruh Civil Rights Act against the Defendants with the California Department of Fair Employment and Housing (hereinafter referred to as "DFEH"). Pursuant to the shared agreement between DFEH and the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC"), EEOC deferred its investigations to DFEH, which issued Plaintiff a right to sue letter on November 5, 2021.

11. Accordingly, Plaintiff has exhausted his administrative remedies in a timely manner and prior to filing this action against the Defendants.

12. Before his last job assignment for Defendants from which he was terminated around February 2021, Plaintiff was hired out of one of Defendants' offices located in Orange County, California in August 2016, as an Equipment Operator, procurement, iron worker and material handling technician. Plaintiff's

employment was involuntarily terminated while still receiving treatment for his work related injuries, as well as having endured years of a racially hostile work environment. Plaintiff was also a victim of work-place retaliation because of his protests and complaints about the numerous incidents of racial and national origin harassment and discrimination he experienced as a Black, Nigerian/African-American and a disabled employee.

13. During the course of his employment with these Defendants, Plaintiff, as a Black Nigerian/African-American employee, did not receive the same or similar terms and conditions of employment as his similarly situated non-Black colleagues, such as not receiving the promotions he deserved or the jobs assignments that would have provided him with more favorable benefits, merely on account of his race, color, and national origin.

14. During the course of Plaintiff's employment and while he would be performing tasks in connection with his work for these Defendants, Defendants' supervising and managing agents of Defendants repeatedly made racially offensive jokes and used racial epithets of and concerning Black and Nigerian/African-Americans in the presence of and directed at Plaintiff in order to harass and cause him emotional distress.

15. From about the time his employment started with Defendants Plaintiff noticed that he was receiving inferior job assignments solely on account of his color, race, and national origin. For instance, Plaintiff now recalls that at the time he was hired by Defendants to work at their North Dakota facilities, he was assigned to work in the lower position of a material handling technician even though he was hired as an operator. Defendants' supervisor in charge of the crew refused to take Plaintiff as a member of his all non-Black operation crew.

16. During the course of Plaintiff's employment, he was referred to and called several derogatory names and subjected to numerous derogatory comments by his

colleagues and employees of Defendants on account of his race, color and national origin.

17. During the course of Plaintiff's employment, even though his colleagues and supervisors were forced to recognize and accept his exceptional work ethics and competence and as such would commend his outstanding services and would even nominate him to receive meritorious awards, Defendants, however, refused to give these awards to Plaintiff even though his supervisor would privately tell Plaintiff that the award actually should have been given to Plaintiff.

18. At the beginning of Plaintiff's employment with the Defendants, he suffered a work related injuries resulting in the crushing of his right middle finger. Rather than providing Plaintiff with the prompt and necessary medical assistance to save his finger - as was recommended by a medical doctor or summon an emergency ambulance to immediately attend to and to transport Plaintiff to a hospital - Plaintiff was instead driven to various clinics in an employee's personal vehicle. At the clinics they took Plaintiff, medical staff at each clinic advised Defendants' agents that their clinics were not adequately equipped to treat Plaintiff's condition; that Plaintiff required immediately medical attention at a major hospital if his finger was to be saved.

19. Several hours after the incident, and after suffering a lot of unnecessary pain and loss of blood, Plaintiff was eventually taken to a hospital at Bellingham, Washington. This hospital also informed Defendants' agents that the hospital was not equipped to treat Plaintiff's injuries; and they then referred Plaintiff to a hospital in Seattle, Washington which was more than a three-hour drive away from Bellingham. Plaintiff continued to experience great pain and suffering as Defendants refused to provide him with the necessary and recommended medical care and attention he deserved due to his injuries.

20. The Bellingham Hospital medical professionals' advice that Plaintiff must

be airlifted to Harbor View Medical Center in Seattle for immediate medical treatment to save Plaintiff's badly damaged finger was ignored by Defendants' agents. The agents of Defendants insisted that they would take Plaintiff by road to Seattle to receive treatment. Defendants failed to provide Plaintiff timely medical care and treatment to reduce his severe pains and suffering and to properly treat his injuries on account of his race, color, and national origin.

21. Plaintiff would lose his right middle finger as a result of Defendants' deliberate failure to provide him immediate medical attention solely because of his race, color, and national origin.

22. Following the six-hour surgery on his lost finger, Defendants' agent ordered Plaintiff to return to work within a few hours of the surgery as he was not allowed to rest even though Plaintiff was in severe pains.

23. Defendants continued to demand that Plaintiff perform several tasks following his work-related injuries without modifying or accommodating his disability and physical or physiological permanent impairment despite Plaintiff's requests for such reasonable accommodation.

24. In order to ensure that he continued to provide the competent work he was known to produce for them, and notwithstanding the restrictions placed on him by his doctors, Defendants' agents, supervisors and managing officers ordered Plaintiff to ignore these restrictions and directives from his physicians following the loss of his right middle finger. Defendants wanted Plaintiff to continue performing his normal and regular duties regardless of his doctors' restrictions or directives and the physical and mental pains and sufferings that he was experiencing.

25. Though Plaintiff often informed Defendants' managing agents of his medical condition and disability, especially as his doctor's advised that he would have to undergo further surgery on his finger and receive post surgery therapy

thereafter. Defendants' managing supervisor told Plaintiff that he must immediately return to work for Defendants despite the constant pains Plaintiff suffered from the injuries to his finger.

26. Sometime in January of 2021, Plaintiff reminded Defendants' supervisors that he was merely following the orders and instructions and would like to perform tasks that were in line with the restrictions placed on him by his doctors, Defendants' supervisors he did not care and informed Plaintiff that if he did not immediately return to work to perform his normal and usual duties he should consider himself fired or to be a former employee of the Defendants.

27. Rather than provide Plaintiff with his requested reasonable accommodation for proper medical treatment and care, and a reasonable accommodation to be assigned tasks consistent with his doctors' restrictions on account of his permanent injuries and disability, Defendants transferred Plaintiff to their Utah Chevron refinery where Plaintiff was forced to perform his normal and unrestricted work for Defendants while experiencing severe pains and discomfort whereas no non-Black or non-Nigerian/African-American employees were not subjected to such mistreatment.

28. During the course of his employment with these Defendants and at relevant times to this action, while he was assigned to work for Defendants at the Washington Cherry Point BP Refinery, Defendants' employees subjected Plaintiff to derogatory comments and name calling on account of his race, color and national origin.

29. There were instances that Defendants' employees painted a mocking black picture of Plaintiff on the walls of the restrooms at Defendants' Cherry Point BP Refinery work site causing co-employees to mock and laugh at Plaintiff. Since Plaintiff's protests and complaints against the discriminatory mistreatment he was subjected to were ignored by Defendants, the derogatory comments intensified.

30. During relevant times to this action and in the course of his employment, Defendants' agents would tell Plaintiff that they were surprised and impressed by how Plaintiff worked hard in the performance of his tasks and duties since "your people" do not like to do hard work like him.

31. As part of the campaign of harassment, discrimination, and intimidation he was subjected to during the relevant periods of this action, Defendants' supervising agents regularly referred to Plaintiff in a demeaning, harassing, and humiliating manner as, among other things, that Nigerians are known to be fraudsters, or whether Plaintiff or persons he knows have victimized people by obtaining money through email fraud yet, and in demeaning, angry tone, and belittling manner, refer to Black employees as "lazy."

32. Plaintiff recalls being referred to at various times during the course of his employment with these defendants by the use of terribly painful, hurtful, degrading, and offensive words and expressions; and his co-workers would often laugh and mock him as these derogatory comments were directed at Plaintiff even though he protested and complained against his being subjected to such humiliation and hostile work environment. These mistreatment continued throughout his employment with the Defendants.

33. During the course of his employment with Defendants, Plaintiff was often directed to do multiple tasks that his non-Black or non-Nigerian/African-American colleagues were not required or asked to perform. Though Plaintiff would diligently perform all of the assigned duties and more, Defendants' agents and supervisors would still insist Plaintiff stay behind to clean up after the other non-Black employees.

34. Although Defendants acknowledged that Plaintiff was one of their most productive, competent and hardworking employees, he was nevertheless denied the job promotions, wages and pay increases, and equal pay he deserved and was

entitled to as a result of his race, color, and national origin.

35. After Defendants' agents learned that Plaintiff would be required to undergo additional surgery in connection with his missing right middle finger, Defendants' managing agent and supervisor told Plaintiff not to return to work as they were furious that Plaintiff would not be immediately available to continue his duties for Defendants since Plaintiff would undergo post-surgery recovery therapy.

36. Defendants' agents continued to threaten and intimidate Plaintiff to return to work or his employment would be terminated. The discriminatory and retaliatory threats to terminate his employment was initiated, implemented, approved, and ratified by Defendants and their agents on account of Plaintiff's disability, race, color, and national origin.

37. Even though Plaintiff was one of the most competent, diligent, and experienced employees of the Defendants, he was denied promotions and equal pay relative to his non-Black and non-Nigerian/African-American employees, some who were employed later in time than Plaintiff and who Plaintiff trained and yet were promoted over him solely on account of Plaintiff's race, color and national origin.

38. As a result of Defendants' refusal to grant his repeated requests for the promotions he was qualified for and entitled as a result of his seniority, expertise, and competence, Plaintiff was assigned to lesser tasks, one of which caused him to lose one of his fingers.

39. After sustaining the injuries which caused his finger to be amputated, Defendants continued their mistreatment of Plaintiff due to his race, color, and national origin by failing to provide him with prompt, caring, and competent medical attention and treatment. Indeed, they continued to use him to perform his normal and regular duties in total disregard of and for his health and safety.

40. Rather than address his repeated complaints of discrimination and harassment Plaintiff endured during his working for Defendants, Defendants' agents and employees only ignored his complaints but Defendants used the complaints as a way and means to retaliate against Plaintiff.

41. Defendants engaged in unlawful retaliation against Black, Nigerian/African-Americans like Plaintiff for complaining of the discriminatory and harassing treatment to their supervisor-perpetrators and other managing and supervising agents of Defendants. Rather than investigate and stop the discrimination and harassment, Defendants' Human Resources Department intensified the racial and national origin discrimination, and refused or failed to take any reasonable steps to remedy Defendants' flagrant violation of federal and state of California civil rights laws.

42. Some of Defendants' supervising agents who were perpetrating these discriminatory and harassing conduct even boasted that Defendants cannot afford to terminate them because they have been indispensable managers with several years of relationship with Defendants' senior management and that Plaintiff should stop complaining or otherwise he will be fired.

43. Defendants' conduct as fully set forth herein was done with discriminatory intent, based on the fact that Plaintiff is member of a protected class.

44. Plaintiff was at all relevant times mentioned herein, capable of performing the job duties and responsibilities for those positions according to the standards of set by his employer.

45. As a direct, legal and proximate result of Defendants' actions and omissions set forth herein, Defendants have breached their duties imposed on all employers as established by pertinent statutes.

46. As a further direct and proximate result of Defendants' acts, omissions and conduct, Plaintiff has suffered and continue to suffer lost wages and other benefits

of employment.

47. The conduct of the Defendants and the managing and supervising agents of Defendants as set forth herein, were intentional, discriminatory, deliberate, willful and malicious. All of the unlawful acts and conduct are known to Defendants ' officers, directors and managing agents, who despite such knowledge permitted the discrimination, harassment and retaliation to continue, constituting extreme and outrageous conduct. All of the actions, omissions, and conduct described herein were carried out with reckless, deliberate and flagrant disregard to the truth and civil rights of PLAINTIFF and other members of his protected classes who exercised their rights to complain against discrimination, harassment and retaliation in employment, and were despicable actions taken without privilege or any justification and which entitles Plaintiff to recover punitive damages in amounts to be determined at trial of this action.

FIRST CAUSE OF ACTION
FOR UNLAWFUL EMPLOYMENT DISCRIMINATION IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT 42 U.S.C §2000e-2(a), AS AMENDED, AGAINST ALL OF THE DEFENDANTS

48. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

49. Defendants subjected Plaintiff and other members of his protected classes to terms and conditions which were inferior to the terms and conditions under which similarly situated non-Nigerian-American, non-Black or non-African-Americans employees were employed.

50. Defendants unlawfully discriminated against and/or harassed Plaintiff on account of Plaintiff's race, color, and national origin in violation of the pertinent provisions of Title VII of the Civil Rights Act of 1964, as amended and set forth in Title 42 of the United States Code, § 2000e-2(a).

51. Defendants, by and through a pattern or practice of unlawful discrimination, have violated the Civil Rights Act in that they injured Plaintiff by engaging in discriminatory employment practices.

52. As a direct and proximate result of the aforementioned discriminatory acts of the Defendants, Plaintiff sustained damages including loss of earnings and other benefits and were injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe pain and mental anguish. These injuries will result in some permanent disability to Plaintiff.

## SECOND CAUSE OF ACTION FOR UNLAWFUL EMPLOYMENT RETALIATION IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT 42 U.S.C §2000e-3(a), AS AMENDED, AGAINST ALL OF THE DEFENDANTS

53. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

54. At all relevant times to this action, Defendants owed Plaintiff a duty not to retaliate against him for opposing or complaining about race, color or national origin motivated discrimination or harassment, as mandated by Title VII of the Civil Rights Act, 42 U.S.C §2000e-3(a), as amended.

55. During his employment with Defendants, Plaintiff protested and complained against the discriminatory and harassing conduct he was experiencing to his supervisors and managers. On or around January of 2021, Plaintiff complained to Defendants' managing agent and supervisor about the discrimination and harassment he was been subjected by the managers and supervisors of Defendants. Instead of addressing Plaintiff's concerns and complaints, Defendants forced Plaintiff to involuntarily leave his employment with Defendants.

56. Plaintiff engaged in protected activity when he complained to the managing

and supervising agents of Defendants.

57. In perpetrating the actions and omissions discussed set forth herein, Defendants' managing and supervising agents, servants and employees engaged in unlawful retaliation in violation of Title VII.

58. As a direct and proximate result of the aforementioned unlawful retaliatory acts of the Defendants, Plaintiff sustained damages including loss of earnings and other benefits and was injured in his health, strength, and activity, sustaining injury to his bodies, and shock and injury to his nervous system and person, including injuries of severe pain and mental anguish, in amounts to be determined at trial.

59. Defendants' acts of retaliation against Plaintiff on the basis of race, color or national origin were wanton, willful, and intentional with malicious and reckless disregard of his rights and sensibilities.

## THIRD CAUSE OF ACTION FOR UNLAWFUL EMPLOYMENT DISCRIMINATION IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER CALIFORNIA GOVERNMENT CODE (Cal. Gov. Code § 12940(a)), AS AMENDED, AGAINST ALL OF THE DEFENDANTS

60. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

61. At all relevant times mentioned herein, Defendants owed Plaintiff and other Nigerian/African-Americans employees a duty not to discriminate against them in the terms and conditions of their employment on the basis of their race, color, national origin, ancestry or disability as mandated by the Fair Employment and Housing Act set forth in California Government Code §12940(a).

62. As set forth herein, Defendants treated Plaintiff differently, as opposed to the treatment of Plaintiff's similarly situated non-Nigerians or non-Black or non-African-American employees. Defendants' decision to treat Plaintiff in this

disparate and adverse manner was based upon Plaintiff's national origin or racial, ancestral or disability status and was intentional, wanton, and willful, and with malicious, deliberate and reckless disregard for Plaintiff's rights and sensibilities.

63. As a direct and proximate result of the aforementioned discriminatory acts of the Defendants, Plaintiff sustained damages including loss of earnings and other benefits and were injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe pain and mental anguish, in amounts to be determined at trial.

FOURTH CAUSE OF ACTION FOR UNLAWFUL EMPLOYMENT RETALIATION FOR OPPOSING DISCRIMINATION AND HARASSMENT IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER CALIFORNIA GOVERNMENT CODE (Cal. Govt. Code § 12940(h)), AS AMENDED, AGAINST ALL OF THE DEFENDANTS

64. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

65. At all relevant times mentioned herein, Defendants owed Plaintiff and other Black, Nigerian-Americans or African-America employees a duty not to retaliate against them in opposing or complaining about national origin, disability or racially motivated harassment, pursuant to the provisions of the Fair Employment and Housing Act set forth in California Government Code §12940(h); (m)(2).

66. Plaintiff engaged in protected activities when he reported to Defendants' agents and managers about the race, disability and national origin motivated discrimination and harassment of his supervisors and managers..

67. As a direct and proximate result of the aforementioned discriminatory acts of the Defendants, Plaintiff sustained damages including loss of earnings and other benefits and was injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person,

including injuries of severe pain, suffering, emotional distress, anxiety, and mental anguish, in amounts to be determined at trial.

FIFTH CAUSE OF ACTION FOR
DISABILITY, RACE, COLOR AND NATIONAL ORIGIN
DISCRIMINATION IN VIOLATION OF PLAINTIFF'S RIGHTS
UNDER CALIFORNIA UNRUH CIVIL RIGHTS ACT
ALSO KNOWN AS Civil Code §§ 51; 51.5; 51.7; and 52,
AGAINST ALL OF THE DEFENDANTS

68. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

69. Defendants unlawfully discriminated against and/or harassed Plaintiff on account of his disability, race, color, and national origin, in violation of the pertinent provisions of the California Civil Code §§ 51; 51.5; 51.7; and 52, et seq., during his employment as Plaintiff was qualified and able to perform the essential functions of his job with reasonable accommodation.

70. Under Civil Code § 51(b):

> "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

71. Under Civil Code § 51.5 (a):

> "No business establishment of any kind whatsoever shall discriminate against, ...any person in this state on account of any characteristic listed or defined in subdivision (b) ... of Section 51."

72. Pursuant to Civil Code §51.7 (a):

"All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property ... on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, ... or because another person perceives them to have one or more of those characteristics."

73. According to Civil Code § 52:

(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000)

to be awarded to the person denied the right provided by Section 51.7."

74. Defendants' acts as described above were done on account of Plaintiff's race, color, national origin and disability and done in violation of Plaintiff's statutory rights as declared under, among others, Civil Code §§ 51, 51.5, 51.7, and 52.

75. Despite Plaintiff's protestations that he was protecting himself from the verbal abuse of the Defendants, he was nevertheless further humiliated by Defendants and their supervising and managing agents.

76. As a proximate result of Defendants' foregoing acts, Plaintiff suffered discomfort and annoyance and experienced mental suffering. Plaintiff sustained injuries to his nervous system and person, all of which injuries have caused, and continue to cause, Plaintiff great mental and nervous pain and suffering.

77. As a result of Plaintiff's injuries, the foregoing mental distress which he sustained have caused Plaintiff general damages in a sum to be proven at trial. As a proximate result of the above-described acts, Plaintiff has suffered special damages in an amount to be proven at trial.

78. The above recited acts by Defendants were done with malice, oppression, and fraud in that Defendants acted with the intent to embarrass Plaintiff on account of his race, color, national origin and ancestry.

79. Plaintiff also requests any and all relief and remedies available under Civil Code §§ 51, 51.5, 51.7, and 52.

DEMAND FOR TRIAL BY JURY

80. Plaintiff demands a trial by jury on all issues triable of right by a jury under the Constitution, and laws of the United States of America.

WHEREFORE, Plaintiff prays that this Court:

1. Award monetary damages and such other damages in an amount equal to the total damages shown by the evidence presented herein at the time of trial.

2. Award exemplary and punitive damages against the DEFENDANTS herein in an amount in excess of $750,000.00 pursuant to the provisions of law;

3. Award Plaintiff his costs, including reasonable attorney fees, expert fees and costs in an amount to be determined based upon the evidence presented at the time of trial.

4. Award such other and further relief as the Court deems just and proper.

Respectfully Submitted:

LAW OFFICES OF ODION L. OKOJIE

________/s/ Odion L. Okojie__________
Odion L. Okojie, Attorney to Plaintiff,
ANTHONY AWOSANYA